UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BUZZFEED INC.,

    Plaintiff,

    v.

U.S. DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 19-3194 (CKK)

MEMORANDUM OPINION
(August 19, 2024)

This lawsuit arises from a Freedom of Information Act ("FOIA") request made by Plaintiff Buzzfeed Inc. ("Plaintiff" or "Buzzfeed") to the Executive Office for United States Attorneys ("EOUSA"), a component agency of Defendant U.S. Department of Justice ("Defendant"). Plaintiff's FOIA request sought records pertaining to the case file of *United States v. Khanani*, No. 15-CR-20468-MGC (S.D. Fla.), including communications sent or received by the former U.S. Attorneys and Assistant U.S. Attorneys ("AUSAs") involved in the case. *See* Compl., Ex. A, ECF No. 1-1.

Before the Court are Defendant's [27-1] Motion for Summary Judgment and Plaintiff's [28-1] Cross-Motion for Summary Judgment. Upon consideration of the briefings,[1] the relevant

---

[1] The Court's consideration has focused on the following documents:
- Plaintiff's Complaint ("Compl."), ECF No. 1, and accompanying exhibits;
- Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Def.'s Mot."), ECF No. 27-1, and accompanying attachments;
- Plaintiff's Combined Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion ("Pl.'s Cross-Mot."), ECF No. 28-1, and accompanying attachments;
- Defendant's Reply in Support of Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Reply"), ECF No. 30; and

1

legal authorities, and the record as a whole, the Court shall **GRANT IN PART** and **DENY IN PART** Defendant's Motion for Summary Judgment, and will **GRANT IN PART** and **DENY IN PART** Plaintiff's Cross-Motion for Summary Judgment.

## I.     BACKGROUND

In June 2015, Altaf Khanani was indicted by a grand jury with fourteen (14) counts related to money laundering.  Pl.'s SMF ¶ 4, ECF No. 28-5; Pl.'s Cross-Mot., Ex. B, ECF No. 28-3; *see United States v. Khanani*, No. 15-CR-20468-MGC (S.D. Fla.).  In November 2016, Khanani entered into a plea agreement and pled guilty to count one of the indictment, and the remaining counts (counts 2 through 14) were subsequently dismissed.  Pl.'s SMF ¶ 5; Pl.'s Cross-Mot., Ex. C, ECF No. 28-4.

On July 25, 2019, Buzzfeed submitted a FOIA request to EOUSA seeking records pertaining to the case file for *United States v. Khanani*, No. 15-CR-20468.  Def.'s SMF ¶ 1, ECF No. 27-2.  Specifically, Buzzfeed requested:

   a. A copy of the case file for U.S. v. Khanani, 15-cr-20468-MGC (S.D. Fla.);
   b. Any and all communications, including but not limited to emails, letters, memoranda (in draft and final form), that former U.S. Attorneys for the Southern District of Florida Benjamin G. Greenberg and Wifredo A. Ferrer sent, received, signed, or wrote, relating or referring to the Khanani case; and
   c. Any and all communications, including but not limited to emails, letters, memoranda (in draft and final form), SDFL Assistant U.S. Attorneys Bruce Brown, Paul Schwartz and Richard O.I. Brown sent, received, signed, wrote, relating or referring to the Khanani case.

Compl., Ex. A (quotation cleaned up).  EOUSA acknowledged receipt of Buzzfeed's FOIA request on August 5, 2019, responding that the records of a "third party generally cannot be released absent express authorization and consent of the third party, proof that [the third party] is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest

---

- Plaintiff's Reply in Support of its Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 32.

2

and that significant public benefit would result from the disclosure of the [] records." *Id.*, Ex. B, ECF No. 1-2. Claiming that the requested records are "generally exempt" under FOIA, and that the release of such records without authorization would result "in an unwarranted invasion of personal privacy," EOUSA denied Buzzfeed's FOIA request pursuant to FOIA Exemptions 6 and 7(C) and the Privacy Act, 5 U.S.C. § 552a. *Id.* On August 12, 2019, Buzzfeed appealed the denial of its FOIA request to the Office of Information Policy, *see id.*, Ex. C, ECF No. 1-3, which subsequently affirmed the denial on September 17, 2019, *see id.*, Ex. D, ECF No. 1-4.

Plaintiff initiated this lawsuit on October 24, 2019. *See generally* Compl. After Plaintiff filed its complaint, Defendant began searching for responsive records pertaining to the *Khanani* case. Def.'s SMF ¶ 7. Since October 2019, Defendant has produced approximately 21 pages of responsive records in full and 104 pages in part; Defendant has withheld in full approximately 738 pages of responsive records (including the case file for *United States v. Khanani*). *Id.* ¶¶ 26–31.

In September 2021, Defendant filed the pending Motion for Summary Judgment. *See generally* Def.'s Mot. In support of its Motion, Defendant includes the declarations of Vinay Jolly, Attorney Advisor with EOUSA, and Francys Marcenaros, FOIA Paralegal Specialist for the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL"). *See* Jolly Decl., ECF No. 27-3; Second Jolly Decl., ECF No. 27-5; Marcenaros Decl., ECF No. 27-4; Marcenaros Supp. Decl., ECF No. 27-6. In response, Plaintiff filed the pending Cross-Motion for Summary Judgment, challenging the adequacy of Defendant's search and some (but not all) of Defendant's claimed exemptions. *See generally* Pl.'s Cross-Mot. With both motions fully briefed, the Court turns to their resolution.

## II.     LEGAL STANDARD

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552, to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 872 (D.C. Cir 1992) (en banc) (citation omitted), *cert. denied*, 507 U.S. 984 (1993).  To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011).  Ultimately, "disclosure, not secrecy, is the dominant objective of the act." *Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (citations omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (PLF) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007) (PLF)).  "The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (RC) (citation omitted).

The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. C.L. Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted).

### III. DISCUSSION

In the pending motion, Defendant seeks summary judgment as to: (1) the adequacy of its search; (2) its claimed exemptions; and (3) segregability. *See generally* Def.'s Mot. Plaintiff's cross-motion challenges the adequacy of Defendant's search and the propriety of Defendant's reliance on some (but not all) FOIA exemptions. *See generally* Pl.'s Cross-Mot. Plaintiff also requests leave to conduct "limited" discovery "to address continued deficiencies in [Defendant's] search explanation." Pl.'s Reply at 1.

#### A. Adequacy of Defendant's Search

The Court's analysis begins by addressing the adequacy of Defendant's search in response to Plaintiff's FOIA request. Broadly, Plaintiff challenges the adequacy of the search as it relates

5

to the correspondence of U.S. Attorneys (former U.S. Attorneys Greenberg and Ferrer) and, separately, AUSAs (R. Brown, B. Brown, and Schwartz).  *See* Pl.'s Cross-Mot. at 5–8.

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted).  "The agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Id.* at 326 (citation and alterations omitted).  The agency may not "limit it search to only one or more places if there are additional sources that are likely to turn up the information requested." *Id.* (citation omitted).

"At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (same).  Summary judgment must be denied "if a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials[.]" *DiBacco*, 795 F.3d at 188 (citation omitted) (alteration in original).

1. AUSAs' Correspondence

The Court shall first address Defendant's search for records as it relates to the correspondence sent or received by the AUSAs involved in the Khanani case.  To process Plaintiff's FOIA request, Marcenaros explains that the agency began by using CaseView—the computer case tracking system used by USAO-SDFL—to "identify and determine the likely location" of any records pertaining to the Khanani case.  Marcenaros Decl. ¶ 5.  According to

6

Marcenaros, this query "was the most likely means of determining the location of any USAO files." *Id.* CaseView identified the location of the Khanani case file and the names of the AUSAs who prosecuted the case: R. Brown, Schwartz, and B. Brown. *Id.* ¶ 6. In 2020, Marcenaros emailed those three AUSAs, requesting any records responsive to Plaintiff's FOIA request. *Id.* ¶ 7. The AUSAs searched their email archives, using the following search terms: "US v. Khanani," "Case No.: 15-20468-CR-MGC,"[2] "Benjamin G. Greenberg," and "Wifredo A. Ferrer." *Id.* ¶ 8. The AUSAs also searched the folders on their computer hard drives using "various permutations of those terms and any specific folders or areas where they thought responsive material might have been saved." *Id.* These searches yielded 239 emails with attachments as potentially responsive records from AUSAs B. Brown and R. Brown. *Id.* ¶¶ 8–9. AUSA Schwartz stated that he did not have responsive records. *Id.* ¶ 9. Then, in August 2021, AUSA Schwartz informed Marcenaros that he had "misinterpreted the initial request," and a subsequent search performed by him produced 118 emails with attachments as potentially responsive to Plaintiff's FOIA request. Marcenaros Supp. Decl. ¶ 8. These additional records were forwarded to EOUSA for review. *Id.* ¶ 9. Marcenaros avers that the search performed on behalf of USAO-SDFL "was reasonably calculated to uncover and identify all records potentially responsive" to Plaintiff's FOIA request. Marcenaros Decl. ¶ 12; Marcenaros Supp. Decl. ¶ 11.

Plaintiff raises various objections to the adequacy of Defendant's FOIA search as it relates to the AUSAs' correspondence. *See generally* Pl.'s Cross-Mot. at 6–8. Broadly, Plaintiff contends that Defendant's search terms were too narrow, the declarations fail to adequately explain why Plaintiff's suggested search terms were not used, and the description of "various permutations"

---

[2] Marcenaros explains that placing a colon symbol in front of the court case number was a mistake, but it "should not have impacted the outcome of a search for records" associated with that case number because the search feature in CaseView requires a specific format for the case number query that would omit such an error from the query's search terms. Marcenaros Supp. Decl. ¶ 6.

7

lacks the necessary specificity to determine the adequacy of Defendant's search. *Id.* at 6–7. Plaintiff also takes issue with AUSA Schwartz's initial misinterpretation of the request. *Id.* at 7.

As a general matter, a FOIA requester cannot dictate the search terms used for the FOIA request. *See Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (RDB). Rather, the agency has "discretion in crafting a list of search terms that 'they believe[ ] to be reasonably tailored to uncover documents responsive to the FOIA request.'" *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (BAH) (citation omitted). "FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002); *see also Liberation Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015) (BAH) ("Where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior.").

Here, Plaintiff's FOIA request sought "any and all communications" sent or received by AUSAs B. Brown, Schwartz, and R. Brown as it pertains to the Khanani case. Compl., Ex. A. These AUSAs searched their email archives using search terms that included the case name, case number, and the two U.S. Attorneys (Greenberg and Ferrer) involved in the case. Marcenaros Decl. ¶ 8. They similarly searched their computer hard drives using "various permutations" of those terms. *Id.* ¶ 8. Although these searches appear reasonable, Marcenaros does not explain what "various permutations" were used by the AUSAs in conducting their search. *See generally id.* Without identifying the search terms utilized by the AUSAs, the Court cannot conclusively determine that Defendant's search was reasonable. *See Oglesby*, 920 F.2d at 68 ("A reasonably detailed affidavit, setting forth the search terms . . . is necessary to afford a FOIA requester an

8

opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment."); *Walston v. Dep't of Def.*, 238 F. Supp. 3d 57, 65 (D.D.C. 2017) (EGS) ("Without a complete list of the search term used in response to [the] FOIA request, the Court is unable to conclude that [the] search was adequate."). Accordingly, the Court will direct Defendant to supplement the current record with additional information specifying the exact search terms used by the AUSAs.

Plaintiff also takes issue with Defendant's explanation of what occurred with AUSA Schwartz's search for records. *See* Pl.'s Cross-Mot. at 7. However, Marcenaros provided a reasonable explanation of how AUSA Schwartz initially "misinterpreted" the request and searched for "case-specific documents, rather than searching through all of his work emails." Marcenaros Supp. Decl. ¶ 8. In any event, AUSA Schwartz rectified his error by conducting another search. *Id*. To the extent Plaintiff suggests agency bad faith, the Court is not persuaded on this basis alone. *See Fischer v. Dep't of Just.*, 723 F. Supp. 2d 104, 108–09 (D.D.C. 2010) (ESH) ("[M]istakes do not imply bad faith. In fact, the agency's cooperative behavior of notifying the Court and plaintiff that it had discovered a mistake, if anything, shows good faith.").

2. U.S. Attorneys' Correspondence

The Court next turns to Defendant's search for records as it relates to former U.S. Attorneys Greenberg and Ferrer.

In March 2020, EOUSA instructed Michelle Mullinix, Forensics Investigations PM, to conduct a search on behalf of USAO-SDFL for all potentially responsive records of former U.S. Attorneys Greenberg and Ferrer. Marcenaros Decl. ¶ 11. Marcenaros explains that, due to a data retention policy, the records and emails of former U.S. Attorneys are transferred to and retained by EOUSA, not USAO-SDFL. *Id.* This policy also dictates that the email accounts of former

9

employees "are deleted after 3 years from the date of separation," including the email accounts of former U.S. Attorneys. Marcenaros Supp. Decl. ¶ 10.[3] As a result, USAO-SDFL was "no longer in possession of any official emails or documents pertaining to" former U.S. Attorneys Greenberg and Ferrer. Marcenaros Decl. ¶ 11.

Additionally, EOUSA's Office of the Chief Information Officer ("OCIO") searched the records of the former U.S. Attorneys by searching their "personal drives" and the "email archive system called 'Proofpoint.'" Jolly Decl. ¶ 17; *id.* n.9. The following search terms were used: "Khanani," "U.S. v. Khanani," and "15-cr-20468-MGC." *Id.* ¶ 17. Potentially responsive emails were sent to EOUSA FOIA for processing. *Id.* Like Marcenaros, Jolly explains that the EOUSA office, and not USAO-SDFL, maintains the records of the former U.S. Attorneys. *Id.*

In its cross-motion, Plaintiff questions how the determination was made that USAO-SDFL no longer possessed any records for the former U.S. Attorneys. Pl.'s Cross-Mot. at 5. But this explanation was provided by the declarants. Marcenaros averred that "USAO-SDFL is no longer in possession of any official emails or documents pertaining to former" U.S. Attorneys Greenberg and Ferrer. Marcenaros Decl. ¶ 11. Marcenaros again stated in a supplemental declaration that "the records and emails of former U.S. Attorneys are transferred to EOUSA and are retained by EOUSA and not USAO-SDFL." Marcenaros Supp. Decl. ¶ 10. Jolly similarly stated that OCIO, not USAO-SDFL, maintains the records for the former U.S. Attorneys. *See* Jolly Decl. ¶ 17.

Agency declarations carry "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Plaintiff's contention that USAO-SDFL must have some records, *see* Pl.'s Reply at 1, amounts to mere

---

[3] U.S. Attorney Ferrer resigned in March 2017, and U.S. Attorney Greenberg resigned in January 2020. Marcenaros Supp. Decl. ¶ 9.

speculation and therefore is insufficient to rebut the presumption of good faith afforded to the agency's declarations, *SafeCard Services, Inc.*, 926 F.2d at 1200.  Furthermore, Plaintiff fails to recognize that USAO-SDFL did conduct a search for responsive records of the former U.S. Attorneys.  *See* Marcenaros Decl. ¶ 11 (Mullinix performed a search on behalf of USAO-SDFL). Altogether, Defendant's search for responsive records as it relates to the former U.S. Attorneys reflects a "good faith effort" by the agency, "using methods which [could] be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.  The Court therefore finds that its search was adequate in this regard.

* * *

In sum, the Court concludes that Defendant is entitled to summary judgment as to the adequacy of its search for the U.S. Attorneys' correspondence.  The Court shall therefore grant summary judgment in favor of Defendant and deny summary judgment against Plaintiff on this issue.  However, the Court shall deny without prejudice Defendant's motion for summary judgment as to the adequacy of the search for the AUSAs' correspondence.  Without the complete list of the search terms used, the Court cannot determine whether Defendant is entitled to judgment as a matter of law.  The Court will order Defendant to provide additional representations describing the search terms used as it relates to the AUSAs' correspondence.  The parties may renew their motions for summary judgment on this issue once the record has been supplemented.

### B. FOIA Exemptions

Turning to the FOIA exemptions Defendant has invoked, Defendant withheld materials pursuant to FOIA Exemptions 5, 6, 7(A), 7(C), 7(D), and 7(F).  *See generally* Def.'s Mot.  Plaintiff does not challenge the applicability of Exemptions 7(A), 7(D), and 7(F).  Pl.'s Cross-Mot. at 4. Accordingly, the Court shall grant summary judgment for Defendant as to those exemptions.

11

As for the remaining exemptions, Defendant withheld approximately 710 pages, and redacted portions of records, pursuant to Exemption 5, and Defendant withheld the Khanani case file pursuant to Exemptions 6 and 7(C).[4]  *See* Jolly Decl. ¶¶ 28, 39; Second Jolly Decl. ¶ 12. Broadly speaking, these FOIA exemptions implicate the agency's deliberative decision-making process (Exemption 5) and personal privacy rights (Exemptions 6 and 7(C)).  Plaintiff objects to the application of these exemptions on multiple grounds.  *See* Pl.'s Cross-Mot. at 8–11.

An agency bears the burden of demonstrating the applicability of the FOIA exemptions it claims. *Pub. Inv'rs Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 3 (D.C. Cir. 2014).  Often, the agency will establish the propriety of a FOIA exemption "by providing affidavits regarding the claimed exemptions." *Shapiro v. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018).  The agency may also submit "a detailed description of the information withheld through the submission of a so-called '*Vaughn* Index.'" *Defs. of Wildlife*, 623 F. Supp. 2d at 88 (citing *Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973)).  The agency's accompanying affidavits or declarations "must 'provide[] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant, and correlat[e] those claims with the particular part of a withheld document to which they apply.'" *Id.* (quoting *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006)).  "Withholding information under conclusory, generalized, or sweeping allegations of exemptions is not acceptable." *Elec. Priv. Info Ctr. v. DEA*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (EGS).

Based on the current record, the Court finds that Defendant's support for its FOIA exemptions suffers from a threshold lack of specificity.  With its motion, Defendant proffered two declarations from Jolly, Attorney Advisor of EOUSA, to support its withholdings pursuant to various FOIA exemptions.  *See* Jolly Decl.; Second Jolly Decl.  In these declarations, however,

---

[4] Based on the current record, it is unclear to the Court how much information was withheld—either in full or in part—under Exemptions 6 and 7(C).

12

Jolly offers broad explanations supporting the applicability of FOIA Exemptions 5, 6, and 7(C) to generalized categories of documents. *See generally* Jolly Decl. And Defendant has not provided another way for the Court to specifically connect any of the agency's categorical justifications for a claimed FOIA exemption to any specific document or redaction. As such, the agency's "broad categorical descriptions" within the current record do not allow the Court to "engag[e] in a meaningful review of the agency's decision" to withhold specific material under the agency's claimed FOIA exemptions. *Hall v. Dep't of Just.*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (HHK) (citing *Oglesby*, 79 F.3d at 1176); *see also Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) ("[C]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.") (citation and internal quotation marks omitted).

For example, Jolly explains that Defendant invoked Exemption 5 for certain communications by the AUSAs and U.S. Attorneys. *See, e.g.*, Jolly Decl. ¶¶ 21, 25, 26–27. This exemption was invoked to withhold approximately 710 pages of records, *id.* ¶ 28; Second Jolly Decl. ¶ 12, as well as "portions of [] records," Jolly Decl. ¶ 25. But within this set of 710 pages, it is unclear how many documents were withheld because of the attorney-client privilege, the attorney work-product privilege, or the deliberative process privilege (or a combination thereof). Instead, Jolly provides a broad explanation that the records were withheld because of those three privileges. *See, e.g., id.* ¶¶ 21, 25, 26. Similarly, it is unclear how much information was redacted—but the record otherwise produced—because of one (or more) of these privileges. *See id.* ¶ 25 (the attorney work-product privilege was invoked "to protect records or portions of these records").

In short, Defendant's categorical justifications for its FOIA withholdings fail to facilitate a "meaningful review" of its claimed FOIA exemptions. *Hall*, 552 F. Supp. 2d at 27. The Court is unable, with the present record, to clearly discern which of the agency's justifications apply to any of the redactions made or documents withheld. This is contrary to the agency's obligation to "provide a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant, and correlate[e] those claims with the particular part of a withheld document to which they apply." *Defs. of Wildlife*, 623 F. Supp. 2d at 88 (quoting *Jud. Watch*, 449 F.3d at 146); *see also Kowal v. Dep't of Just.*, 464 F. Supp. 3d 376, 384 (D.D.C. 2020) (TJK).

Accordingly, the Court shall deny without prejudice the parties' respective cross-motions for summary judgment regarding the disputed claimed exemptions at this time. The Court will direct Defendant to supplement the record with a *Vaughn* Index. After the submission of its *Vaughn* Index, the Court will permit the parties to file revised briefing addressing the validity of Defendant's claimed FOIA exemptions.

### C. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency must provide a "detailed justification" and not merely make "conclusory statements" to support its segregability determination. *Mead Data Cent. Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). At the same time, however, agencies "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which can be overcome by contrary evidence produced by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Defendant contends that it complied with its obligation to disclose all reasonably segregable materials to Plaintiff, pointing to its declarations for support. Def.'s Mot. at 42–43. Because the Court will order Defendant to supplement the record to clarify its claimed FOIA exemptions, the Court finds it is premature to render a final determination on segregability at this time. Accordingly, the Court shall deny without prejudice Defendant's motion for summary judgment as to segregability. The parties may address this issue in their subsequent briefing.

### D. Plaintiff's Request for Discovery

Lastly, the Court addresses Plaintiff's request for "limited" discovery into Defendant's "permutations" of search terms used during the hard drives search and whether these unidentified search terms should have been used for the emails search. Pl.'s Reply at 4.

The Court has "broad discretion to manage the scope of discovery" in FOIA cases. *SafeCard Services, Inc.*, 926 F.2d at 1200. Generally, "[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied no factual dispute remains." *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 183 (D.D.C. 2013) (RCL) (quoting *Banker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006)).

Here, Plaintiff's request for limited discovery is based on its belief that Defendant's declarations explaining its search process were deficient. Pl.'s Reply at 4. But if the Court deems the declarations of an agency deficient, then it may request that the agency supplement the record rather than order discovery. *Hall v. CIA*, 881 F. Supp. 2d 38, 73 (D.D.C. 2012) (RCL); *see also Jud. Watch, Inc. v. Dep't of Just.*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) (PLF) ("[W]hen an agency's affidavits or declarations are deficient regarding the adequacy of its search . . . the courts generally will request that the agency supplement its supporting declarations."). As Defendant

15

will be ordered to supplement its declarations, the Court sees no reason to grant Plaintiff's request for discovery. Accordingly, this request is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT IN PART** and **DENY IN PART** Defendant's [27-1] Motion for Summary Judgment and will **GRANT IN PART** and **DENY IN PART** Plaintiff's [28-1] Cross-Motion for Summary Judgment. Specifically, the Court will order as follows:

The Court will **GRANT** summary judgment in favor of Defendant as to the adequacy of the agency's search for the U.S. Attorneys' correspondence. To complete its FOIA search with respect to the AUSAs' correspondence, Defendant shall supplement the record by or before **October 18, 2024**, identifying the specific search terms used while conducting the search.

Next, the Court will **GRANT** summary judgment in favor of Defendant with respect to the applicability of FOIA Exemptions 7(A), 7(D), and 7(F). However, the Court will **DENY WITHOUT PREJUDICE** both parties' respective motions with regard to Defendant's remaining claimed FOIA exemptions (FOIA Exemptions 5, 6 and 7(C)). By or before **October 18, 2024**, Defendant shall supplement the record by filing a *Vaughn* Index supporting its claimed FOIA exemptions.

Finally, the Court will **DENY WITHOUT PREJUDICE** the parties' respective motions as to segregability and Plaintiff's request for discovery. Given the outstanding disputes regarding Defendant's search terms and claimed FOIA exemptions, the Court concludes that it is premature to rule on segregability at this juncture.

Following the submission of Defendant's supplement(s) by or before **October 18, 2024**, the Court will set a new briefing schedule, permitting the parties to file renewed cross-motions addressing the remaining issues in this case.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
